**Charles E. CASHMAN, petitioner, Respondent,**

v.

**Barbara CASHMAN, Appellant.**

**No. 46942.**

Supreme Court of Minnesota.

July 22, 1977.

Barnett, Ratelle, Hennessy, Vander Vort, Stasel & Herzog and James H. Hennessy, Minneapolis, for appellant.

Loren M. Barta, New Prague, for respondent.

Heard before OTIS, PETERSON, Mac-LAUGHLIN, and SCOTT, JJ., and considered and decided by the court en banc.

PER CURIAM.

This is an appeal in an action for dissolution of marriage. The marriage in question lasted almost 28 years and has resulted in nine surviving children. At the time of marriage in 1948, appellant wife was a fully qualified nurse, but she has not worked outside the home since her first pregnancy in 1948. Respondent husband is the county judge of Steele County, Minnesota. He testified that his net income per month from all sources was $1,893.29. At the time of trial appellant was 51 years old, and respondent was 55 years old.

Appellant was awarded permanent custody of the four minor children remaining at home, whose ages were 11, 14, 16, and 17 years at the time of trial. The award of child support was as follows: $500 per month until June 28, 1976; $450 until September 23, 1977; $400 until February 12,

1979; and $300 until May 6, 1982. By May 1982 all of the children will have reached 18 years of age. The child support award is not contested.

Appellant was awarded $100 per month alimony, payable from January 1976 until January 1979, for a total of 36 months. She would receive no further support from respondent following the termination of child support in 1982. The trial court apparently felt that appellant could be retrained as a nurse and thus could eventually support herself. Appellant indicated in her testimony at trial that she would need at least 2 years to become recertified as a registered nurse. There was also evidence that she suffers from circulatory problems in her legs and from lower back problems, for which she now wears a back brace, probably resulting from her 12 pregnancies.

Appellant was also awarded the family homestead, which the trial court found was valued at $74,250 and subject to a mortgage of $26,872, and certain items of personal property. Respondent was made responsible for all the family indebtedness exclusive of the mortgage on the home, totaling somewhat over $60,000. Respondent was given family farm property valued at $53,-500 to be sold or mortgaged to pay off the greater part of these debts. Respondent was also ordered to pay the attorneys fees.

Appellant asks for a revised schedule of alimony and child support, which would leave her with permanent alimony of $500 per month after May 1982. The following chart shows the difference between the amount awarded in the judgment below and appellant's request:

| | Court's Award | Appellant's Request |
|---|---|---|
| January 21, 1976 | $600 | $800 |
| June 28, 1976 | 550 | 750 |
| September 23, 1977 | 500 | 800 |
| January 21, 1979 | 400 | 800 |
| February 12, 1979 | 300 | 700 |
| May 6, 1982 | 0 | 500 |

The requested alimony begins at $300 per month, rises to $400 per month in September 1977, and finally rises to $500 per month in May 1982 and permanently thereafter. Appellant feels that she has need for such alimony and that her husband is, and

will be, able to pay it. Respondent relies on the wide discretion of the court in marriage dissolution cases and alleges that appellant does not need the amount of alimony she seeks and that he cannot afford to pay it. Respondent also argues that appellant can return to nursing and thus contribute to her own support.

We find the legal issue to be whether the trial court abused its discretion in awarding the appellant temporary alimony of $100 per month for 36 months. See, *Hertz v. Hertz*, 304 Minn. 144, 229 N.W.2d 42 (1975).

The essence of this case lies in the financial realities presented. Leaving aside the alimony and child support payments for a moment, the following results are reached as to the family property and debts. Appellant received the $74,000 homestead subject to a $26,000 mortgage due and payable on December 31, 1980, after which date the mortgagee (Cashman Greenhouses) may foreclose. Respondent received real property valued at $53,500 to be used to satisfy debts to unrelated parties. The evidence showed that respondent required at least $1,000 per month to hold off demand creditors of the family. Presumably the sale of the farm property would alleviate or eliminate this heavy burden on his income. Appellant indicated her intention to eventually sell the large family home.

The problem arises as to how appellant will support herself beginning in 1982, when both alimony and child support payments terminate. She will then be 57 years old, which is hardly young enough to renew her career as a full-time nurse. Further, it is seriously questionable whether a woman in her middle fifties, with certain physical problems attributable to 12 pregnancies, should be required to attempt a career which would be difficult even for a young woman in the best of health.

This would leave appellant with the alternative of selling the home, which after satisfaction of the mortgage would probably net $50,000. This amount would represent her sole source of support, since her brief employment prior to marriage was insufficient to qualify her for social security bene-

fits drawn from her own account. She would have to invest the $50,000 in an annuity to ensure that she would have some income in her old age. This would mean she could not purchase another home but probably could afford a modest apartment.

Such a result does not seem entirely equitable, in view of the fact that, upon reaching age 65, respondent can expect a retirement income from various sources in excess of $21,000 per year.[1] In the event appellant wished to purchase a more modest home with the proceeds of the first, she would be left with $10,000 to $20,000 to live on for the rest of her life, assuming she can find a home for $40,000 or less. This would hardly seem to be sufficient for the most frugal life style, particularly if appellant lives into her seventies.

We find that the district court abused its discretion in denying appellant an award of permanent alimony. While it is reasonable to expect her to sell the large family home in the future to supplement her alimony, it is not reasonable to expect that a return to nursing, even if possible at this point in her life, would be financially successful enough to support her needs. The alimony she has requested herein is not excessive under the circumstances and will provide her with financial security in later life and the possibility of maintaining a modest home.

The district court is instructed to amend its order for alimony so that when the net payments to appellant reach $500 per month on September 23, 1977, they will remain at that level permanently. The difference between the presently designated child support payments and the $500 amount shall be an award of alimony commencing September 23, 1977, until May 6, 1982. As of that date, $500 per month permanent alimony shall commence and remain in effect until appellant dies or remarries.

Reversed and remanded.

---

1. We must take judicial notice that the salaries of county court judges were increased by L. 1977, c. 35, § 13, and c. 432, § 3, effective July 1, 1977, which in turn would increase pensions received upon retirement.