**In re the Marriage of Coryne Lucille SCHNEIDER, Petitioner, Respondent,**

**v.**

**Dale Francis SCHNEIDER, Appellant.**

No. C0–91–57.

Court of Appeals of Minnesota.

July 9, 1991.

Michael A. Fahey, Carver County Atty. Chantal Sorenson, Asst. County Atty., Chaska, for respondent.

Rebecca H. Frederick, Messerli and Kramer, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY and DAVIES, JJ.

## OPINION

CRIPPEN, Judge.

The trial court ordered appellant to pay $280 per month child support although he was unemployed and not receiving unemployment compensation. Appellant contends that the trial court did not make the required finding that his continued unemployment constituted a bad faith self-limitation of income. We reverse and remand.

## FACTS

The parties were divorced in April 1989. Respondent Coryne Schneider was awarded custody of the couple's minor child, now 16. The trial court ordered appellant to pay child support of 25 percent of his net monthly income with a minimum payment of $280 per month.

In June 1989, appellant lost his job. He brought a motion to reduce his child support obligation. The trial court amended the decree to provide that appellant:

> pay 25 percent of his net monthly income as * * * child support with a minimum payment of $280 except when unemployed when his child support shall be 25 percent of his unemployment compensation.

Pursuant to this modification, appellant paid $254 per month in child support while he was receiving unemployment compensation.

In December 1989, appellant's unemployment compensation benefits were terminated. He paid no child support after the termination of benefits.

After the payments ended, Carver County Community Social Services brought a motion to amend the decree to require appellant to pay a specific dollar amount in child support and thus eliminate the wage percentage alternative. The trial court ordered appellant to pay respondent $280 per month child support. The court characterized its order as an interpretation, and not a modification, of the original decree. The trial court found that the decree's exception for unemployment "must assume that [appellant] will maintain employment to the best of his ability" and concluded "that [appellant] has not shown that he has maintained employment to the best of his ability." The trial court also found that appellant had "survived" by selling his collector cars and obtaining loans from his family.

## ISSUES

1. Could the trial court clarify the prior decree's child support language to create an obligation despite appellant's continued unemployment?

2. Did the trial court make adequate findings to demonstrate that appellant's unemployment was in bad faith?

3. Could the trial court assume appellant's bad faith absent evidence of bad faith?

## ANALYSIS

The decision to modify a child support order lies in the "broad and sound discretion of the trial court, and an appellate court will reverse for an abuse of that discretion only where it finds a 'clearly erroneous conclusion that is against logic and the facts on the record.'" *Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn.1986) (citation omitted).

1. Appellant contends the trial court modified his child support obligation based on his earning capacity without properly determining that he remained unemployed in bad faith. *See Beede v. Law*, 400

N.W.2d 831, 835 (Minn.App.1987) (earning capacity not an appropriate measure of income in modification proceeding unless impracticable to determine obligor's present income or obligor's actual income is unjustifiably self-limited). Respondent contends, as did the trial court, that the decree was not modified but merely clarified.

Regardless of the trial court's characterization of the order, it constitutes a modification. The order imposes an ongoing obligation notwithstanding appellant's unemployment. This obligation contradicts the language of the prior decree which only provided for the sharing of unemployment compensation during times of unemployment.

More important, whether the trial court's order is a modification or a clarification, it raises the question of whether it is lawful to establish a child support obligation during the obligor's unemployment absent a finding that continued unemployment is in bad faith toward the child support obligation. We hold that creation of such an award is not lawful.

The obligation to pay child support is premised on the obligor's ability to pay. *See County of Nicollet v. Larson,* 421 N.W.2d 717, 720 (Minn.1988) (reimbursement of county for past public assistance payments to support child is based on an ability to pay standard). Notwithstanding this general proposition, a child support obligation can be based on earning capacity if the obligor's unemployment is in bad faith. *Beede,* 400 N.W.2d at 835.

Absent such a finding of bad faith, a trial court may not order child support from an individual currently unable to pay support due to unemployment.

2. To conclude that an unemployed obligor has acted in bad faith, the trial court must find that the obligor has unjustifiably self-limited personal income. *Beede,* 400 N.W.2d at 835. The trial court must look at the obligor's ability to work, opportunity to find gainful employment, disposition and will to earn money and contribute a reasonable amount to the family's support, and diligence in seeking employment. *Garcia v. Garcia,* 415 N.W.2d 702, 705 (Minn.App.1987).

Here, the trial court found that appellant had not maintained employment to the best of his ability. The court did not consider or make findings on the availability of jobs or on appellant's qualifications or education. Moreover, the record does not contain adequate evidence to sustain a finding of bad faith. The trial court found that appellant had supported himself by selling off assets and borrowing from family members. Appellant testified he had applied for employment and would continue to apply. Until he was no longer receiving unemployment insurance, appellant complied completely with the decree, reporting all earnings and paying 25 percent of all his unemployment benefits.

It is also significant that bad faith was never alleged during the trial court proceedings and appellant was never questioned about whether his unemployment was justified. If appellant had been asked to respond to a bad faith allegation, his response might have justified a finding of bad faith.

3. Because the trial court found appellant had not shown he had maintained employment to the best of his ability, it apparently reasoned that bad faith could be presumed absent his initial showing of good faith. Under some circumstances, it is arguable that a trial court may presume bad faith unemployment. When an obligor attempts to defeat enforcement of a child support award on the grounds of inability to pay, the obligor has the burden of showing the inability to pay is in good faith. *See Hopp v. Hopp,* 279 Minn. 170, 175–77, 156 N.W.2d 212, 217–18 (1968) (in civil contempt proceeding brought for failure to pay child support, obligor must show reasons for failure to comply). Similarly, when an obligor seeks to modify an existing support award based on inability to pay, the obligor must prove good faith. *Anderson v. Anderson,* 450 N.W.2d 384, 386 (Minn.App.1990).

Appellant does not seek to modify or defeat an existing obligation. Rather, he is responding to the county's attempt to recreate his unconditional obligation to pay $280 per month for child support. The previous decree did not address whether appellant's obligation would continue after

he no longer received unemployment compensation. In these circumstances, he had no initial burden to demonstrate good faith, and bad faith could not be presumed.

Even more significant, appellant received no notice and was not confronted about a claim that he had an obligation even when unemployed. As a result of this approach to the case, appellant was only questioned about whether he remained unemployed. Appellant responded that he was unemployed and that he had been and would continue to seek employment. He was not asked any other questions about his employment status. Under these circumstances, it was particularly inappropriate to presume appellant's ability to pay support.

## DECISION

We reverse the trial court's order and remand for further findings of fact on appellant's ability to pay support.

Reversed and remanded.