In re the Marriage of Ruby Gay EN-GELBY, n/k/a Ruby Gay Tadlock, Petitioner, Appellant,

v.

Elliot M. ENGELBY, Respondent.

No. C8-91-1392.

Court of Appeals of Minnesota.

Jan. 7, 1992.

David R. Spear, Spear & Swanson Law Office, Pine City, for appellant.

Ronald S. Goldser, Zimmerman Reed, Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and PETERSON, and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge *.

Appellant Ruby Gay Engelby, n/k/a Ruby Gay Tadlock, seeks review of the trial court's order denying her motion to hold respondent Elliot M. Engelby in contempt for nonpayment of child support. She argues the trial court erred by placing the burden on her to prove that respondent's failure to pay support was willful. Ruby also contends the trial court erred by denying her request to call respondent as an adverse party under Minn.R.Civ.P. 43.-02. The trial court refused to compel Elliot to testify based on his assertion of his Fifth Amendment right against self-incrimination, and directed a verdict in favor of respondent. We reverse and remand.

## FACTS

The parties were divorced in Smith County, Mississippi, in September 1986. Ruby was awarded custody of their two minor children, and Elliot was directed to pay $300 per month in child support. After the dissolution, Elliot moved to Pine County, Minnesota. Ruby and the children continued to live in Mississippi.

In November, 1987, Ruby filed a Uniform Reciprocal Enforcement of Support Act (URESA) complaint in Mississippi for enforcement of a support order. She claimed Elliot had made only one $100 payment. Subsequently, Pine County Human Services received a request from Smith County for interstate withholding of Elliot's income. Pine County served the Air Force National Guard, Elliot's part-time

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

employer, with an income withholding order. Pursuant to the order, the Air Force has been withholding an average of $107 per month for child support from Elliot's pay.

In June 1988, Elliot moved for termination of income withholding, retroactive modification of support arrearages, reduction of child support, and attorney fees. The trial court denied the motion in its entirety because Elliot had failed to present complete evidence of his income to allow the court to make a support determination. Elliot appealed, and this court affirmed in an unpublished opinion. *See Engelby v. Engelby*, No. C4-89-269, 1989 WL 106272 (Minn.App. Sept. 19, 1989).

In August 1990, Ruby brought the present motion for an order holding Elliot in contempt for failure to pay child support. At the June 5, 1991 hearing, a Pine County Human Services Child Support Officer, Debra Johnson, testified that child support arrearages totaled $11,688.39 as of May 31, 1991. Johnson also testified that the only support payments Pine County had received had been through withholding from Elliot's Air National Guard earnings.

Elliot submitted an affidavit indicating that, other than the National Guard, he had not been employed since July 1988 because of work-related injuries. Elliot did not detail his attempts to find full-time employment, but indicated generally that employers refused to hire him because of his injuries. Elliot stated that after withholding for child support, he received no more than $50 per month in income. Elliot's affidavit indicated he lives with friends and pays no rent, and that his only asset is a car worth approximately $100. Elliot also submitted reports from his physician indicating he sustained a permanent partial disability of seven percent as a result of his injuries.

The trial court denied Ruby's request to call Elliot for cross-examination under Minn.R.Civ.P. 43.02, reasoning that Elliot properly invoked his Fifth Amendment right against self-incrimination. The court granted Elliot's motion to dismiss the contempt proceeding, finding that Ruby had

not sustained her burden to show that Elliot's failure to pay child support was willful. This appeal followed.

## ISSUES

1. Did the trial court err by placing the burden on Ruby to show that Elliot's noncompliance with the support order was willful?

2. Did the trial court properly allow Elliot to invoke his Fifth Amendment privilege against self-incrimination without imposing sanctions for his refusal to submit to examination under Minn.R.Civ.P. 43.02?

## ANALYSIS

1. Civil contempt proceedings are designed to induce future performance of a valid court order, not to punish for past failure to perform. *Minnesota State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 311 Minn. 276, 285, 248 N.W.2d 733, 741 (1976); *see* Minn.Stat. § 588.12 (1990). Minnesota courts have statutory authority to enforce maintenance and child support obligations by imposing sanctions in contempt proceedings. Minn.Stat. § 518.24 (1990). The statute provides in part:

> The obligor is presumed to have an income from a source sufficient to pay the maintenance or support order. *If the obligor disobeys the order, it is prima facie evidence of contempt.*

*Id.* (emphasis added).

In this case, it is undisputed that Elliot has failed to comply with the support order, and arrearages of $11,688.39 have accrued. Ruby established prima facie evidence of contempt. Contrary to the trial court's conclusion, the burden then rested upon *Elliot* to show inability to comply. *See Hopp v. Hopp*, 279 Minn. 170, 175, 156 N.W.2d 212, 217 (1968) (burden of proving inability is on the defendant, who should not be held to have sustained the burden when he failed to make a good-faith effort to conform).

A trial court's findings are clearly erroneous if they were "induced by an erroneous view of the law." *See Ortendahl v. Bergmann*, 343 N.W.2d 309, 311 (Minn.

App.1984). Because the denial of the contempt motion in this case resulted from the trial court's improper allocation of the burden of proof, we must reverse.

2. Ruby argues the trial court erred in refusing to compel Elliot to testify as an adverse party under Minn.R.Civ.P. 43.02. The court concluded that Elliot properly invoked his Fifth Amendment right against self-incrimination.

The privilege against self-incrimination applies in civil as well as criminal proceedings. *Parker v. Hennepin County Dist. Court, Fourth Judicial Dist.*, 285 N.W.2d 81, 82–83 (Minn.1979). If testimony in a civil action "would enhance the threat of criminal prosecution such that reasonable grounds exist to apprehend its danger," the privilege may be invoked. *Id.* at 83. In this case, Elliot's testimony could expose him to a prosecution for criminal contempt. *See* Minn.Stat. § 588.20(4) (1990) (willful disobedience to the lawful process or other mandate of the court constitutes a misdemeanor). The trial court did not err in refusing to compel Elliot to testify under Minn.R.Civ.P. 43.02.

Nevertheless, a civil defendant should not be permitted to gain an unfair advantage by asserting the privilege, especially since, in private civil litigation, the plaintiff's only source of evidence is frequently the defendant himself. *Parker*, 285 N.W.2d at 83 (citation omitted). Elliot's refusal to submit to cross-examination in this case unfairly prejudiced Ruby, because his financial condition, income, and his efforts to comply with the support order are matters peculiarly within his own knowledge. *See Meisner v. Meisner*, 220 Minn. 559, 560, 20 N.W.2d 486, 488 (1945).

To prevent unfair use of the privilege by civil defendants, courts have drawn inferences adverse to the defendant, stricken the defendant's pleadings, counterclaims or affirmative defenses, and even entered default judgments. *See Parker*, 285 N.W.2d at 83 (citations omitted). Such sanctions do not punish a defendant for asserting the privilege, but for failing to answer as he typically would under normal circumstances. *Id.* In this case, the trial court should have imposed an appropriate sanction to prevent unfair prejudice to Ruby resulting from Elliot's refusal to testify.

## DECISION

The trial court erred in placing the burden on Ruby to show that Elliot's failure to comply with the support order was willful. We therefore reverse and remand for a new contempt hearing. On remand, Elliot may not be compelled to testify if he invokes his Fifth Amendment privilege against self-incrimination, but the trial court shall impose appropriate sanctions to prevent unfair prejudice to Ruby.

Reversed and remanded.