*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0739**

In re the Matter of: Eric Joseph Vacko, petitioner,
Appellant,

vs.

Teri Ann Shults,
Respondent.

**Filed May 23, 2016
Affirmed
Reyes, Judge**

Anoka County District Court
File No. 02F605009076

Eric Vacko, Forest Lake, Minnesota (pro se appellant)

Terri A. Melcher, Fridley, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Tracy Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

In this parenting dispute, appellant-father argues that the district court abused its discretion by not holding respondent-mother in contempt of court for interfering with father's parenting time and should not have denied his request for compensatory parenting time. We affirm.

## FACTS

Appellant-father Eric Joseph Vacko and respondent-mother Teri Ann Shults are the parents of B.L.V. who was born in 2001. B.L.V. was born with a disability and is developmentally delayed. He has an individualized education program at school and attends special schools. While the parties were never married, they signed a recognition of parentage form when B.L.V. was born, and father's name is on the child's birth certificate.

In October 2005, mother filed a motion for sole legal and sole physical custody of B.L.V. The parties attended custody mediation. A stipulation and order filed on May 15, 2006, granted mother sole physical and sole legal custody of B.L.V. Father was granted parenting time every other weekend from Friday to Sunday, every Wednesday evening, and alternating holidays.

In November 2013, father filed a motion and sought sole physical custody or in the alternative to modify the parenting schedule. Mother filed a motion opposing father's motion. The district court appointed a guardian ad litem (GAL), and the GAL issued a report in early 2014. The report recommended that B.L.V.'s sole physical custody remain with mother and that she comply with all recommendations for B.L.V.'s treatment and services, especially those provided by his schools. At a hearing held following the submission of the GAL's report, father appeared pro se and argued that B.L.V. was endangered because mother removed him from a special school and medically neglected him by failing to take him to various medical appointments. The district court concluded

that father did not present a prima facie case of endangerment and denied father's motion for modification of custody.

In November 2014, B.L.V. began expressing an unwillingness to attend visits with father. Father filed a motion for contempt alleging that mother was interfering with his parental visitations. The district court denied father's motion for contempt and instead construed his motion as one for parenting-time assistance. On December 23, 2014, the district court granted father four weekends of compensatory parenting time. But B.L.V. continued to resist visits with father. On February 9, 2015, father filed another motion for contempt and parenting-time assistance, alleging the same facts he had alleged previously. Mother submitted a DVD to the district court as evidence of B.L.V.'s behavior to refute the allegation that she interfered with father's visitation rights. On February 25, 2015, the district court denied father's motion. Father appeals.

**D E C I S I O N**

**I.  The district court did not abuse its discretion by denying father's parenting-time assistance and contempt motion.**

Father argues in his informal brief that the district court abused its discretion by refusing to hold mother in civil contempt of court. We are not persuaded.

A district court has broad discretion to hold a party in civil contempt. *Crockarell v. Crockarell*, 631 N.W.2d 829, 833 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001). We review a district court's use of contempt powers for an abuse of discretion. *In re Welfare of J.B.*, 782 N.W.2d 535, 538 (Minn. 2010). "We will reverse the factual findings of a civil contempt order only if the findings are clearly erroneous." *Id*. We

3

review a contempt order to determine whether the order "was arbitrary and unreasonable or whether" the record supports it. *Gustafson v. Gustafson*, 414 N.W.2d 235, 237 (Minn. App. 1987). "[F]acts constituting contempt" must be presented by the party seeking a contempt order. Minn. Stat. § 588.04(a) (2014); *see Clausen v. Clausen*, 250 Minn. 293, 296, 298, 84 N.W.2d 675, 678, 679 (1957).

At the hearing on February 20, 2015, father alleged that mother disrupts his parenting time by recording the parenting-time exchanges, by giving B.L.V. the choice to visit father, and by not walking B.L.V. to father during the exchange. However, mother argued that the difficulties arose because father was not present for the parenting exchanges, B.L.V. does not like to be left alone with father's wife, and B.L.V. is very attached to her.

The district court found that mother was acting in good faith, she was making "every reasonable effort" to encourage parenting time, and that it was unclear why B.L.V. was responding in this way. The district court's written order following the hearing also found that the DVD mother provided "shows [B.L.V.] demonstrating intense adverse reactions to leaving [m]other's house for parenting time with [f]ather. [B.L.V.] does not adequately verbalize his reasons why he does not want to go to [f]ather's home." The district court denied father's motion because it found father's affidavit "conclusory regarding how [m]other's actions interfere with his parenting time and what she could do any different than she is already doing to ease the transition." Additionally, the court found "no evidence in the record that [m]other interfered with [f]ather's parenting time.

4

The record supports the district court's findings and order. Father's motion for contempt regarding mother's alleged interference with parenting time failed to present facts constituting contempt. The Minnesota rules require that a contempt motion and affidavit "shall set forth each alleged violation with particularity," Minn. R. Gen. Pract. 309.01(c), and father's affidavit fails to indicate how mother's conduct specifically interfered with father's parenting time. Father's affidavit merely states the missed visitation dates and how mother's family members have been uncooperative. The evidence supports the district court's decision denying father's motion. Therefore, we conclude that the district court did not abuse its discretion by denying father's contempt motion.

## II. The district court did not abuse its discretion by denying father's request for compensatory parenting time.

Father next argues that he has been active consistently in B.L.V.'s life, mother has wrongfully interfered with his parenting time since November 2014, and the district court abused its discretion by denying him compensatory parenting time as a remedy. We disagree.

"Appellate courts recognize that a district court has broad discretion to decide parenting-time questions, and will not reverse a parenting-time decision unless the district court abused its discretion by misapplying the law." *Newstrand v. Arend*, 869 N.W.2d 681, 691 (Minn. App. 2015) (quotation omitted), *review denied* (Minn. Dec. 15, 2015). "A district court's findings of fact underlying a parenting-time decision will be upheld unless they are clearly erroneous." *Id.* (quotation omitted). "A finding is clearly

5

erroneous if [we are] left with the definite and firm conviction that the [district] court made a mistake." *SooHoo v. Johnson*, 731 N.W.2d 815, 825 (Minn. 2007). "We review the [district] court's findings in a light most favorable to those findings." *Id*.

"If modification would serve the best interests of the child, the court shall modify. . . an order granting or denying parenting time . . . . Minn. Stat. § 518.175, subd. 5(a) (2014). Under Minn. Stat. § 518.175, subd. 1(b) (Supp. 2015), following a hearing, the district court shall "restrict parenting time with that parent as to time, place, duration, or supervision and may deny parenting time entirely, as the circumstances warrant" if it finds that "parenting time with a parent is likely to endanger the child's physical or emotional health or impair the child's emotional development."[1]

Here, the parties attended a hearing on February 20, 2015, to discuss both father's motion for contempt and parenting assistance and mother's cross motion that father be present for all parenting time, pay attorney fees, and pay child support. Mother presented

---

[1] The ultimate concern in a dispute over parenting time is the best interests of the child. *Hagen v. Schirmers*, 783 N.W.2d 212, 216 (Minn. App. 2010). Minn. Stat. § 518.17, subd. 1(a) (2014), lists several factors relevant to a best-interests analysis. But when addressing parenting time, section 518.175 "does not require the court to make findings regarding the best-interests factors in Minn. Stat. § 518.17, subd. 1(a), which addresses custody, rather than parenting time." *Newstrand*, 869 N.W.2d at 691. A substantive amendment to Minn. Stat. § 518.17, subd. 1, was made during the 2015 legislative session. 2015 Minn. Laws ch. 30, art. 1, § 3. Because the relevant amendments do not specify an effective date, the amendments became effective on August 1, 2015. *See* Minn. Stat § 645.02 (2014). We therefore apply the 2015 version of Minn. Stat. § 518.175, but the 2014 version of Minn. Stat. § 518.17, which was in effect when the district court issued its February 25, 2015 order. *See Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, courts apply the law in effect at the time they make their decision, unless doing so would alter vested rights or result in manifest injustice).

6

a DVD that demonstrated B.L.V.'s negative reactions to leaving mother's house for parenting time with father. Father argued that B.L.V. would be fine if mother walked him out to his car because this had been successful in the past. Mother asserted that increasing the number of visits would adversely affect B.L.V.'s life. More specifically, she argued that B.L.V. distrusts people and is very attached to mother because of his disability. And, as previously stated, mother argued that the visits are unsuccessful because father is not always the person transporting B.L.V., B.L.V. acts adversely to father's wife, and he does not like being left alone with her.

In the district court's February 2015 order, it found that B.L.V. continued to have adverse reactions to leaving his mother's house to visit father. It also found that the parties agreed that B.L.V. has refused on many occasions to participate in parenting time with father. The district court denied father's motion for additional compensatory parenting time.

The evidence supports the district court's order denying father's motion. After reviewing the DVD and the parties' affidavits, the district court declined to modify the current parenting-time schedule and denied compensatory time finding that it was in B.L.V.'s best interests and that father's parenting-time loss was not deliberately due to mother's actions. B.L.V. had negative reactions to the parental exchange. He was unable to verbalize his objection to visiting father's home. The district court looked for the "best prospect for success," and a flexible solution. As such, the district court found that a

modification was not in B.L.V.'s best interests.[2]  *See* Minn. Stat. § 518.175, subd. 5(a).

Therefore, we conclude that the district court did not abuse its discretion by denying

father's motion for compensatory parenting time.

**Affirmed.**

---

[2] The district court previously granted father's motion for compensatory parenting time on December 23, 2014.  In doing so, the district court stated that there was no "first-hand information from a . . . professional that B.L.V. is physically or emotionally endangered in [f]ather's care."  But we note that after the February 20, 2015, hearing the district court concluded that the additional compensatory visits were not in B.L.V's best interests.  *See* Minn. Stat. § 518.175, subd. 5(a).